```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                CENTRAL DIVISION at LEXINGTON
```

UNITED STATES OF AMERICA,         )
                                  )
    Plaintiff,                    )   Criminal Action No. 08-1-JMH
                                  )
v.                                )
                                  )
LEVI BRANDON FISHBACK,            )
                                  )   **MEMORANDUM OPINION AND ORDER**
    Defendant.                    )
                                  )

                \*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court on Defendant Fishback's Motion to Suppress [Record No. 13], in which Defendant Fishback has requested that the Court suppress any and all evidence[1] obtained as a result of a traffic stop on August 4, 2007, pursuant to the Fourth Amendment to the United States Constitution and Fed. R. Crim. P. 12(b)(3)(C). Specifically, Defendant argues that the evidence should be excluded from the trial of this matter because it was confiscated by law enforcement officers during a traffic stop for which there was no probable cause and the evidence is, thus, the fruit of an illegal seizure. The United States of America filed a response in opposition to the motion [Record No. 17], and the Court heard argument on March 19, 2008. At the conclusion of that hearing, the undersigned announced that the

---

[1] The evidence includes a handgun, bullets, marijuana in a plastic bag, statements made at the time of Defendant Fishback's arrest, and anything else confiscated from the red Dodge Neon in which he was a passenger.

Motion to Suppress was denied. The purpose of this Memorandum Opinion and Order is to supplement the oral findings and conclusions of the Court and to confirm the order.

## I. Factual Findings

Based upon the testimony provided at the hearing, the Court finds the facts to be as set forth below.

On August 4, 2007, around 4:00 a.m., Lexington Fayette Urban County Division of Police Officers Norma Asher, Benjamin Limp, and Devon Gayles were dispatched to 1301 Centre Parkway due to a report of disorder at that location.[2] When Officer Limp responded, he approached 1301 Centre Parkway and observed a red Dodge Neon parked on Centre Parkway with three occupants, as well as other individuals standing in the area. Officer Limp then approached a woman standing outside of the apartment complex at 1301 Centre Parkway and asked her if she knew whether the occupants of the parked car were involved in a disturbance at that location. She did not respond until Officer Limp told her that he could not help her unless she let him know if those individuals were involved. At that time she nodded her head affirmatively. Officer Limp walked

---

[2] There was evidence presented as to whether the caller reporting the disorder to dispatchers identified all of the participants as black. Defendant Fishback argues that this is meaningful considering the fact that not all of the passengers in the Dodge Neon were, in fact, black. The Court is not persuaded that the caller's description of the participants in the disorder is particularly meaningful to the Court's analysis in light of subsequent events set forth above.

2

toward the red Dodge Neon, shining his flashlight inside. The occupants then drove away in the vehicle despite the officer's request for them to stop. Officer Limp used his portable radio to communicate to Officers Asher and Gayle that a red Dodge Neon was leaving the scene.

Officers Asher and Gayle initiated a traffic stop of the red Dodge Neon, requesting that all occupants show their hands. The driver and front seat passenger complied, although the passenger in the rear seat, Defendant Fishback, raised his right hand but did not comply despite several commands to show his left hand. The driver then told the officers that he had a firearm beside the driver's seat of the vehicle and had a valid permit to carry the firearm (which the police were able to confirm). At this point, all occupants were asked to step out of the vehicle. The driver then began yelling that the subject in the rear seat was trying to shove something under the seat. The driver, a white male named Teegarden, was arrested on a failure to appear warrant. Teegarden explained to police that Fishback had jumped into his car and said that he would give gas money to Teegarden for a ride out of the area.

A search of Defendant Fishback revealed approximately 3.8 grams of marijuana in his pocket. During a search of the vehicle, the officers found a loaded .38 caliber revolver under the driver's seat, wrapped in a red bandana. Defendant Fishback denied any

knowledge of the firearm but stated that the red bandana was his. Defendant Fishback was arrested for being a felon in possession of a handgun as well as possession of marijuana.

**II. Analysis**

    **A. Standing**

Defendant Fishback asserts that, as a passenger in the vehicle, he has standing to challenge the constitutionality of the initial traffic stop. *Brendlin v. California*, 127 S.Ct. 2400 (2007); *United States v. Ellis*, 497 F.3d 606 (6th Cir. 2007). The United States of America does not contest this issue, and the Court agrees that he has standing to pursue the relief sought by his motion.

    **B. The Traffic Stop and Search**

In general, a roadside detention is lawful so long as the officer has probable cause to believe that a motorist has violated the traffic laws. *United States v. Burton*, 334 F.3d 514 (6th Cir. 2003); *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002). When officers have reasonable suspicion that occupants of a vehicle are engaged in criminal activity, they may briefly stop the vehicle to investigate, even in the absence of a violation of the traffic laws. *Gaddis v. Redford Township*, 364 F.3d 763, 768-70 (6th Cir. 2004). "Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable

4

reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *United States v. Payne*, 181 F.3d 781, 788-89 (6th Cir. 1999), *quoting United States v. Cortez*, 449 U.S. 411, 417-418 (1981). Further, a police officer may stop an individual, question him, and perform a carefully limited pat down search for weapons where the officers reasonably conclude that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

Defendant Fishback argues that the mere fact that the red Dodge Neon was in proximity to the location of an alleged altercation at the time the officers arrived was insufficient to create the necessary particularized suspicion about the occupants of the Dodge Neon or any probable cause to initiate the stop of the vehicle. Considering, however, the totality of the circumstances, including the proximity of the Neon to the location of the reported disorder within minutes of same, the female witness' indication that the occupants of the Neon were involved in the disorder, and the vehicle's immediate departure from the area upon the approach of Officer Limp, ignoring his request to stop, Officers Asher and Gayle had a particularized and objective basis upon which to reasonably conclude that criminal activity might be afoot and that the occupants of the vehicle were involved.[3] *Terry*, 392 U.S. at

---

[3] The fact that Officer Limp testified that the Centre Parkway area has a reputation as a high crime area, based on his prior

5

30; *Payne*, 181 F.3d at 788-89.  The traffic stop was proper, and the fruits of the subsequent search of that vehicle by the officers need not be suppressed.

According, **IT IS ORDERED** that the Motion to Suppress Evidence [Record No. 13] shall be, and the same hereby is, **DENIED**.

This the 20th day of March, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

---

experience, might well be considered another relevant factor.  The Court, however, makes no finding that said fact would be sufficient in and of itself to justify a stop.